**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**AT LEXINGTON**
**Civil Action No. _______________**

***ELECTRONICALLY FILED***

---

| | |
|---|---|
| **DUBYA J BRANDS, LLC, d/b/a MAN-O-WAR HARLEY DAVIDSON, d/b/a MAN-O-WAR BUELL, d/b/a MINESHAFT HARLEY DAVIDSON** | **PLAINTIFF** |
| **v.** | **JURY DEMAND** |
| **MARKEL INSURANCE COMPANY** | **DEFENDANT** |

---

**COMPLAINT**

---

COMES NOW the Plaintiff, Dubya J Brands LLC d/b/a Man-O-War Harley Davidson, Man-O-War Buell, Mineshaft Harley Davidson, by and through counsel, and for its Complaint against Markel Insurance Company, would respectfully state as follows:

**PARTIES AND JURISDICTION**

1. Dubya J Brands LLC d/b/a Man-O-War Harley Davidson, Man-O-War Buell, Mineshaft Harley Davidson, is a limited liability company formed under the laws of the Commonwealth of Kentucky, with its principal place of business located in Lexington, Kentucky. At all times relevant hereto, Plaintiff owned the structure located at 2073 Bryant Road, Lexington, Kentucky 40509, hereafter referred to as the "Insured Premises."

2. Defendant Markel Insurance Company ("Defendant") is an insurance company conducting business in the Commonwealth of Kentucky, including Lexington, Kentucky. Defendant's principal place of business is located in Glen Allen, Virginia and is incorporated in

Illinois.

3. This Complaint originates as the result of a winter storm event that severely damaged the Insured Premises and Defendant's unlawful actions in denying Plaintiff's claim for insurance proceeds.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the Insured Premises is situated in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred in Fayette County, Kentucky.

5. Complete diversity of citizenship exists pursuant to 28 U.S.C. § 1332 and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

## FACTS

6. At all times material hereto, the Insured Structure was insured by Defendant. Specifically, Plaintiff was insured pursuant to the terms of an insurance contract whereby Defendant agreed to insure the Insured Premises against property damage, bearing policy number MKP0000501335400 (the "Policy") with a policy period of March 1, 2024 through March 1, 2025. The Policy is attached as **Exhibit A**.

7. The Policy provided insurance coverage for direct physical loss of or damage to the buildings located on the Insured Premises.

8. The Policy is an "all risk" policy, which means that it provided insurance coverage for all risks of direct physical loss to or damage of covered property unless the loss is excluded or limited by the Policy.

9. As set forth in the Policy's declarations, coverage for the building on the Insured Premises was on a "replacement cost" valuation basis, which means that coverage is provided on a replacement cost basis without deduction for depreciation.

10. Pursuant to the Policy and at all times relevant to this Complaint, Plaintiff paid a premium to Defendant in exchange for insurance coverage as set forth in the Policy. Plaintiff paid the required premiums at all times relevant to this Complaint.

11. On January 13, 2025, a severe winter storm event struck the Insured Premises, and the weight of snow, ice, and/or sleet caused substantial damage to the Insured Premises (the "Loss"). As a result of the Loss, the commercial building on the Insured Premises suffered immediate and direct accidental physical damage, including but not limited to, damage to the roofs and exterior.

12. Prior to the Loss, the Insured Premises was in good condition, was well-maintained, and showed no signs of damage before the Loss.

13. The Policy was in effect at the time of the Loss, and the loss and damage to the Insured Premises resulting from the Loss constitutes a compensable claim under the terms of the Policy. As it relates to the Loss and damage at issue, there is no applicable exclusion.

14. Plaintiff promptly reported the Loss and damage resulting from the Loss to Defendant.

15. Plaintiff fulfilled all of the duties that were imposed upon it by the Policy.

16. Subsequently, Defendant accepted the Loss as covered and paid $205,387.14 in replacement cost value, less deductible, for a roof replacement.

17. However, Defendant refused to replace the damaged exterior siding.

18. Additionally, to replace the roof, the siding of the Insured Premises must be replaced due to the means and methods of repair necessary to replace the roof.

19. Defendant concluded the exterior siding damage was not covered by the Policy and disclaimed coverage.

20. Thereafter, due to the dispute, Defendant hired FCNA (Forensic Consultants of North America), to investigate the Loss.

21. FCNA concluded that the flashing was not damaged and did not need to be removed and replaced to replace the roof of the Insured Premises, thus Defendant continued to deny coverage.

22. However, FCNA concluded that since the siding cannot be matched, the Insured could simply install trim.

23. As a result of FCNA's report, Defendant's contractor, Chris Ballew of Crawford and Company, prepared a supplemental estimate of $15,457.53 for siding related repairs.

24. Although, admitting that siding needed to be replaced, Mr. Ballew's estimate is still insufficient to repair the entirety of the siding and return the Insured Premises to pre-loss condition.

25. Plaintiff submitted a Proof of Loss to Defendant for replacement cost totaling $395,109.91.

26. However, Defendant rejected Plaintiff's Proof of Loss.

27. Defendant's denial of coverage was wrongful and in breach of the Policy's terms.

28. There is no reasonable coverage dispute concerning coverage for the damage sustained to the Insured Premises as a result of the Loss.

29. Defendant's refusal to promptly and fully pay Plaintiff the amounts owed pursuant to the terms of the Policy was without justification and was in bad faith.

30. The amount owed by Defendant to Plaintiff, less the applicable deductible, is in excess of $75,000.00.

31. Defendant failed to sufficiently investigate the Loss and determine the actual and real scope of damages from the Loss.

32. Defendant wrongfully refused to fully and promptly pay the amounts owed to Plaintiff as a result of the Loss. The payments made by Defendant to Plaintiff were insufficient to indemnify Plaintiff for the Loss and restore the Insured Premises to pre-loss condition pursuant to the Policy.

33. In order to resolve this dispute, Plaintiff notified Defendant that Plaintiff disputed the amount of loss determined by Defendant and demanded appraisal pursuant to the Policy on June 8, 2026.

34. The Policy's appraisal clause provides as follows:

> **2. Appraisal**
>
> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> a. Pay its chosen appraiser; and
> b. Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

35. Plaintiff selected Toby Johnson as their appraiser.

36. By email dated August 11, 2026, Defendant notified Plaintiff that it was rejecting Plaintiff's appraisal demand.

37. Defendant asserted that this was not an issue appropriate for appraisal because it alleged that the siding damage was due to faulty workmanship, the roofing contractor did not need

to remove and replace the flashing to replace the roof, any other damage was pre-existing, and the siding damage was a separate occurrence unrelated to the Loss.

38. Plaintiff's claim involves no coverage issues, but rather, simply requires a determination of the amount of loss, which includes the scope of damage, the cause of damage, and the means and methods of repair.

39. In violation of Kentucky law and the Policy, Defendant denied appraisal was appropriate and refused to proceed with the appraisal process.

40. Plaintiff has fulfilled all duties imposed upon it by Defendant and is at no fault in this matter. Defendant, however, has failed to fully and promptly pay Plaintiff's valid claim for insurance proceeds and/ or to proceed with the appraisal process.

41. Defendant's decisions to deny payment and refuse to participate in the appraisal process are in violation of the terms of the Policy.

42. There is no reasonable coverage dispute or other justifiable reason for Defendant's failure to pay Plaintiff's claim. Defendant also refused, and still refuses, to allow the contractual appraisal process to resolve the parties' dispute.

43. Defendant's failure to timely pay Plaintiff the amount owed pursuant to the Policy and refusal to participate in the appraisal process is without justification.

44. Defendant's failure to pay the money and benefits due and owing Plaintiff under the Policy has caused Plaintiff to initiate this Complaint to recover the insurance proceeds to which it is entitled.

45. As a direct and proximate cause of Defendant's actions/inactions, Plaintiff has sustained substantial compensable losses, including all amounts due Plaintiff under the Policy and other such costs and expenses incurred as a result of Defendant's wrongful conduct.

## CAUSES OF ACTION

**Count I – Breach of Contract**

46. The preceding allegations are incorporated herein by reference as if set forth verbatim.

47. The Policy issued by Defendant to Plaintiff is a binding contract supported by valid consideration.

48. Defendant is in total, material breach of the Policy, and Defendant is liable to Plaintiff in the maximum amount allowed by the Policy for the loss and damage to the Insured Premises. Specifically, Defendant breached its contract with Plaintiff by its failure and refusal to fully and promptly pay the amounts owed to Plaintiff as a result of the Loss as required by the terms of the Policy and refusal to participate in the appraisal process outlined in the Policy.

49. As a result of Defendant's breach of contract, Plaintiff sustained substantial compensable losses for the amounts claimed under the Policy, including but not limited to the replacement cost value and/or actual cash value of the damage to the Insured Premises, as well as consequential damages, plus interest thereon.

50. Defendant is liable to Plaintiff for its losses.

**Count II – Bad Faith**

51. The preceding allegations are incorporated by reference as if set forth verbatim herein.

52. Defendant had a duty to exercise good faith in dealing with Plaintiff during the handling of its claim. Defendant's refusal to pay the amounts contractually owed to Plaintiff was arbitrary and capricious and constitutes bad faith.

53. The bad faith of Defendant is evidenced by the fact that, at all times hereto, Defendant knew or reasonably should have known, that Plaintiff was justifiably relying on the money and benefits due under the terms of the Policy, as well as the actions of Defendant as set forth in paragraph 54 below. Nevertheless, acting with conscious disregard for Plaintiff's rights and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on Plaintiff, Defendant consciously refused to pay Plaintiff's valid claim, withheld monies and benefits rightfully due to Plaintiff, and refused to participate in the appraisal process pursuant to the Policy. Defendant was obligated to pay Plaintiff's claim associated with the Loss and to participate in the appraisal process; Defendant lacked a reasonable basis in law and fact for its refusal and failure to pay the claim and participate in the appraisal process; Defendant knew there was no reasonable basis for its refusal and failure to pay the claim and participate in the appraisal process; and/or Defendant acted with reckless disregard for whether such a basis existed.

54. Defendant's bad faith is evidenced by all of the facts and allegations set forth above in this Complaint, together with the following actions or inactions by Defendant which were perpetuated with evil motive or with reckless indifference to the rights of Plaintiff:

a) Defendant's intentional or reckless failure to fully inform Plaintiff of its rights and obligations under the policy;

b) Defendant's intentional or reckless failure to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim when liability was reasonably clear;

c) Defendant's intentional or reckless refusal to pay Plaintiff's claim and to otherwise honor its obligations under the Policy;

d) Defendant's intentional and reckless refusal to participate in the appraisal process

as required by the Policy;

e) Defendant's engaging in acts and practices toward Plaintiff that amount to acts of baseness, vileness, and/or depravity that are contrary to the good faith duties owed to Plaintiff;

f) Defendant's intentional refusal to pay Plaintiff fully for its losses;

g) Defendant's intentional failure to pay all amounts due and owing under the Policy and to participate in the appraisal process with no reasonable justifiable basis;

h) Defendant's refusal and failure to conduct a reasonable investigation of Plaintiff's claim based on all available information;

i) Defendant's unjust refusal to pay Plaintiff's claim for its own financial preservation with no reasonable or justifiable basis;

j) Defendant's failure to treat Plaintiff's interests equal to that of its own;

k) Defendant's misrepresentation to Plaintiff of the application of the Appraisal process to avoid fully paying Plaintiff the amounts to which it is entitled; and

l) Defendant's engagement in such other acts toward Plaintiff that are contrary to the duties owed to Plaintiff by Defendant.

55. In so acting, Defendant intended to and did injure Plaintiff in order to protect its own financial interests and should be punished.

**<u>Count III – Violations of the Unfair Claims Settlement Practices Act</u>**

56. The preceding allegations are incorporated by reference as if set forth verbatim herein.

57. Defendant violated KRS § 304.12-230 (the Unfair Claims Settlement Practices Act), resulting in damage and harm to Plaintiff, for which Defendant is liable pursuant to KRS §

446.070.

**Count IV – Violations of KRS 304.12-235**

58. The preceding allegations are incorporated by reference as if set forth verbatim herein.

59. Defendant's failure to promptly and fully pay Plaintiff's claim was and is without reasonable foundation. Defendant failed to make a good faith attempt to settle Plaintiff's claim within 30 days, and Defendant owes Plaintiff interest at the rate of 12% from 30 days after the filing of notice and proof of Plaintiff's claim until paid on the final claim payment.

60. Defendant failed to settle Plaintiff's claim within 30 days of being provided adequate information to adjust the claim and its delay was without reasonable foundation. Plaintiff is entitled to recovery of its attorney's fees and costs incurred in obtaining a claim settlement.

WHEREFORE, as a result of the foregoing, Plaintiff would respectfully request that this Honorable Court award a judgment against Defendant as follows:

A. For specific performance of the Policy issued by Defendant to Plaintiff;

B. For compensatory damages and consequential damages to Plaintiff as a result of Defendant's breach of contract, in an amount to be determined by jury;

C. For compensatory damages to Plaintiff for inconvenience, financial distress, and worry, in an amount to be determined by the jury;

D. For punitive damages in an amount to be determined by the jury;

E. For reasonable attorney's fees, pursuant to KRS § 304.12-235 and/or other laws;

F. For all costs incurred by Plaintiff as a result of this action;

G. For pre- and post-judgment interest;

H. For statutory interest on the final claim payment at 12% interest; and

I. For such other further and general relief as this Court deems just and equitable.

**JURY DEMAND**

Plaintiff demands a jury.

Respectfully submitted,

McWHERTER SCOTT & BOBBITT, PLC

s/Clinton H. Scott
CLINTON H. SCOTT #95862
54 Exeter Road, Suite D
Jackson, Tennessee 38305
Telephone: (731) 664-1340
Facsimile: (731) 664-1540
clint@msb.law

*Attorney for Plaintiff*